**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| **CELLULAR COMMUNICATIONS EQUIPMENT LLC,** Plaintiff, | **Civil Action No. 6:13-cv-508-KNM** |
| v. | **JURY TRIAL DEMANDED** |
| **LG ELECTRONICS, INC., et al.,** Defendants. | |

**LG ELECTRONICS, INC. AND LG ELECTRONICS U.S.A., INC.'S**
**ANSWER AND ADDITIONAL DEFENSES TO PLAINTIFF'S SECOND AMENDED**
**COMPLAINT FOR PATENT INFRINGEMENT**

Defendants LG Electronics, Inc. and LG Electronics U.S.A., Inc. (collectively, "LG Electronics"), by and through their attorneys, answer the Second Amended Complaint ("complaint") of plaintiff Cellular Communications Equipment LLC ("plaintiff" or "CCE") as follows:

**THE PARTIES**

1.      Cellular Communications Equipment LLC ("CCE") is a Texas limited liability company with its principal place of business in Plano, Texas.

**Answer**:  LG Electronics is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 1 of the complaint and, therefore, denies such allegations.

2.      On information and belief, LG Electronics, Inc. is incorporated under the laws of South Korea with its principal place of business at LG Twin Towers 20, Yeouido-dong, Yeongdeunspo-gu, Seoul 150-721, South Korea.  This Defendant does business in the State of Texas and in the Eastern District of Texas.  This Defendant has been served with process and has appeared.

**Answer**:  LG Electronics admits that LG Electronics, Inc. is incorporated under the laws of South Korea and is located at LG Twin Towers, 20, Yeouido-dong, Yeongdeungpo-gu, Seoul,

150-721, South Korea. LG Electronics admits that LG Electronics, Inc. has been served with process and has appeared in this case.  It is unnecessary to admit or deny the remaining allegations in paragraph 2 of the complaint because LG Electronics, Inc. consents to the personal jurisdiction of this Court for the purpose of this action only.

3.      LG Electronics U.S.A., Inc. (with LG Electronics, Inc., "LG") is a Delaware corporation with its principal place of business in Englewood Cliffs, New Jersey.  This Defendant does business in the State of Texas and in the Eastern District of Texas.  This Defendant has been served with process and has appeared.

**Answer**:  LG Electronics admits that LG Electronics U.S.A., Inc. is a Delaware corporation with offices in Englewood Cliffs, New Jersey. LG Electronics admits that LG Electronics U.S.A., Inc. has been served with process and has appeared in this case.  It is unnecessary to admit or deny the remaining allegations in paragraph 3 of the complaint because LG Electronics U.S.A., Inc. consents to the personal jurisdiction of this Court for the purpose of this action only.

4.      AT&T Mobility LLC ("AT&T") is a Delaware limited liability company with its principal place of business in Atlanta, Georgia. This Defendant does business in the State of Texas and in the Eastern District of Texas. This Defendant has been served with process and has appeared.

**Answer**:  LG Electronics is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 4 of the complaint and, therefore, denies such allegations.

5.      Cellco Partnership d/b/a Verizon Wireless ("Verizon") is a Delaware general partnership with its principal place of business in Basking Ridge, New Jersey. This Defendant does business in the State of Texas and in the Eastern District of Texas. This Defendant has been served with process and has appeared.

**Answer**:  LG Electronics is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 5 of the complaint and, therefore, denies such allegations.

6.     Sprint Solutions, Inc. is a Delaware corporation with its principal place of business in Reston, Virginia. This Defendant does business in the State of Texas and in the Eastern District of Texas. This Defendant has been served with process and has appeared.

**Answer**: LG Electronics is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 6 of the complaint and, therefore, denies such allegations.

7.     Sprint Spectrum L.P. is a Delaware limited partnership with its principal place of business in Overland Park, Kansas. This Defendant does business in the State of Texas and in the Eastern District of Texas. This Defendant has been served with process and has appeared.

**Answer**: LG Electronics is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 7 of the complaint and, therefore, denies such allegations.

8.     Boost Mobile, LLC (with Sprint Solutions, Inc., and Sprint Spectrum L.P., "Sprint") is a Delaware limited liability company with its principal place of business in Irvine, California. This Defendant does business in the State of Texas and in the Eastern District of Texas. This Defendant has been served with process and has appeared.

**Answer**: LG Electronics is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 8 of the complaint and, therefore, denies such allegations.

9.     T-Mobile USA, Inc. is a Delaware corporation with a principal place of business in Bellevue, Washington. T-Mobile USA, Inc. maintains a significant presence in Richardson, Texas and offers products and services under the T-Mobile and MetroPCS brands. This Defendant does business in the State of Texas and in the Eastern District of Texas. This Defendant has been served with process and has appeared.

**Answer**: LG Electronics is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 9 of the complaint and, therefore, denies such allegations.

10.    T-Mobile US, Inc. (with T-Mobile USA, Inc., "T-Mobile") is a Delaware corporation with its principal place of business in Bellevue, Washington. T-Mobile US, Inc. maintains a significant presence in Richardson, Texas, and offers products and services under the

T-Mobile and MetroPCS brands. This Defendant does business in the State of Texas and in the Eastern District of Texas. This Defendant has been served with process and has appeared.

**Answer**: LG Electronics is without knowledge or information sufficient to form a belief

as to the truth of the allegations contained in paragraph 10 of the complaint and, therefore, denies

such allegations.

## JURISDICTION AND VENUE

11.     This action arises under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others.

**Answer**: LG Electronics admits that the complaint contains allegations that purport to

arise under the patent laws of the United States.

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), and 1367.

**Answer**: LG Electronics admits that this Court has jurisdiction over the subject matter

pursuant to 28 U.S.C. §§ 1331, 1338(a), and/or 1367.

13.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c), and 1400(b). On information and belief, each Defendant is deemed to reside in this judicial district, has committed acts of infringement in this judicial district, has purposely transacted business in this judicial district, and/or has regular and established places of business in this judicial district.

**Answer**: LG Electronics denies that it has committed any acts of infringement in this or

any other district.  LG Electronics consents, however, to venue in this district for the purpose of

this action only.

14.     On information and belief, each Defendant is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to their substantial business in this State and judicial district, including: (A) at least part of their infringing activities alleged herein; and (B) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from goods sold and services provided to Texas residents.

**Answer**:  LG Electronics denies that it has committed any acts of infringement in this or any other district.  LG Electronics consents, however, to the personal jurisdiction of this Court for the purpose of this action only.

## COUNT I

### (INFRINGEMENT OF U.S. PATENT NO. 6,819,923)

15.     CCE incorporates paragraphs 1 through 14 herein by reference.

**Answer**:  LG Electronics incorporates by reference the responses contained in paragraphs 1 through 14 of this answer.

16.     CCE is the assignee of the '9923 patent, entitled "Method for Communication of Neighbor Cell Information," with ownership of all substantial rights in the '9923 patent, including the right to exclude others and to enforce, sue and recover damages for past and future infringements. A true and correct copy of the '9923 patent is attached as Exhibit B.

**Answer**:  It is unnecessary to admit or deny the allegations in paragraph 16 of the complaint because plaintiff's claims of infringement of U.S. Patent No. 6,819,923 have been dismissed with prejudice. *See* Order of Dismissal Regarding U.S. Patent No. 6,819,923, Case No 6:13-cv-00507, Docket No. 432.  Notwithstanding, LG Electronics admits that Exhibit B to the complaint purports to be a copy of U.S. Patent No. 6,819,923 ("the '9923 patent") entitled "Method for Communication of Neighbor Cell Information." LG Electronics is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 16 of the complaint and, therefore, denies those allegations.

17.     The '9923 patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

**Answer**:  It is unnecessary to admit or deny the allegations in paragraph 17 of the complaint because plaintiff's claims of infringement of U.S. Patent No. 6,819,923 have been dismissed with prejudice. *See* Order of Dismissal Regarding U.S. Patent No. 6,819,923, Case No

6:13-cv-00507, Docket No. 432.  Notwithstanding, LG Electronics denies the allegations set forth in paragraph 17 of the complaint.

18.    Defendants LG, AT&T, and T-Mobile have and continue to directly infringe one or more claims of the '9923 patent in this judicial district and elsewhere in Texas and the United States, including at least claim 11, by, among other things, making, using, offering for sale, selling and/or importing LG mobile devices, including, for example: the LG Escape 4G, the LG Nitro HD, the LG Optimus G, and the LG Optimus G Pro, sold or otherwise distributed by or through AT&T (the "'9923 AT&T Mobile Devices"); and the LG DoublePlay, the LG G2X, the LG myTouch Q, the LG Nexus 4, and the LG Optimus L9, sold or otherwise distributed by or through T-Mobile (the "'9923 T-Mobile Mobile Devices"). These devices are collectively referred to as the "'9923 LG Devices."

**Answer**:  It is unnecessary to admit or deny the allegations in paragraph 18 of the complaint because plaintiff's claims of infringement of U.S. Patent No. 6,819,923 have been dismissed with prejudice.  *See* Order of Dismissal Regarding U.S. Patent No. 6,819,923, Case No 6:13-cv-00507, Docket No. 432.  Notwithstanding, LG Electronics denies the allegations set forth in paragraph 18 of the complaint.

19.    Defendants directly infringe the apparatus claims of the '9923 patent by making, offering to sell, selling, and/or importing the '9923 LG Devices. Defendants are thereby liable for direct infringement.

**Answer**:  It is unnecessary to admit or deny the allegations in paragraph 19 of the complaint because plaintiff's claims of infringement of U.S. Patent No. 6,819,923 have been dismissed with prejudice. *See* Order of Dismissal Regarding U.S. Patent No. 6,819,923, Case No 6:13-cv-00507, Docket No. 432.  Notwithstanding, LG Electronics denies the allegations set forth in paragraph 19 of the complaint.

20.    On information and belief, each Defendant is a 3GPP member organization, or is affiliated with a 3GPP member organization, and has known of the '9923 patent at least as early as April 2010, when it was disclosed to 3GPP via the European Telecommunications Standards Institute ("ETSI," an organizational member of 3GPP).

**Answer**:  It is unnecessary to admit or deny the allegations in paragraph 20 of the complaint because plaintiff's claims of infringement of U.S. Patent No. 6,819,923 have been

dismissed with prejudice. *See* Order of Dismissal Regarding U.S. Patent No. 6,819,923, Case No 6:13-cv-00507, Docket No. 432. Notwithstanding, LG Electronics admits that LG Electronics, Inc. is a 3GPP member. LG Electronics denies that it has known of the '9923 patent at least as early as April 2010. LG Electronics is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 20 of the complaint and, therefore, denies such allegations.

21.    On information and belief, despite having knowledge of the '9923 patent and knowledge that they are directly infringing one or more claims of the '9923 patent, Defendants named in this Count have nevertheless continued their infringing conduct and disregarded an objectively high likelihood of infringement; thus, Defendants' infringing activities relative to the '9923 patent have been, and continue to be, willful, wanton and deliberate in disregard of CCE's rights.

**Answer**:  It is unnecessary to admit or deny the allegations in paragraph 21 of the complaint because plaintiff's claims of infringement of U.S. Patent No. 6,819,923 have been dismissed with prejudice. *See* Order of Dismissal Regarding U.S. Patent No. 6,819,923, Case No 6:13-cv-00507, Docket No. 432. Notwithstanding, LG Electronics denies the allegations set forth in paragraph 21 of the complaint.

22.    On information and belief, LG and AT&T test, make, use, offer for sale, sell, and/or import '9923 AT&T Mobile Devices described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution and sale of such devices. Accordingly, LG and AT&T are jointly, severally, or alternatively liable for infringements described in this Count.

**Answer**:  It is unnecessary to admit or deny the allegations in paragraph 22 of the complaint because plaintiff's claims of infringement of U.S. Patent No. 6,819,923 have been dismissed with prejudice. *See* Order of Dismissal Regarding U.S. Patent No. 6,819,923, Case No 6:13-cv-00507, Docket No. 432. Notwithstanding, LG Electronics denies the remaining allegations set forth in paragraph 22 of the complaint.

23.    On information and belief, LG and T-Mobile test, make, use, offer for sale, sell, and/or import '9923 T-Mobile Mobile Devices described in this Count, pursuant to one or more

contractual agreements between them relating to, at least, the distribution and sale of such devices. Accordingly, LG and T-Mobile are jointly, severally, or alternatively liable for infringements described in this Count.

**Answer**: It is unnecessary to admit or deny the allegations in paragraph 23 of the complaint because plaintiff's claims of infringement of U.S. Patent No. 6,819,923 have been dismissed with prejudice. *See* Order of Dismissal Regarding U.S. Patent No. 6,819,923, Case No 6:13-cv-00507, Docket No. 432. Notwithstanding, LG Electronics denies the remaining allegations set forth in paragraph 23 of the complaint.

24. CCE has been damaged as a result of Defendants' infringing conduct described in this Count. Defendants are, thus, liable to CCE in an amount that adequately compensates it for their infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**Answer**: It is unnecessary to admit or deny the allegations in paragraph 24 of the complaint because plaintiff's claims of infringement of U.S. Patent No. 6,819,923 have been dismissed with prejudice. *See* Order of Dismissal Regarding U.S. Patent No. 6,819,923, Case No 6:13-cv-00507, Docket No. 432. Notwithstanding, LG Electronics denies the allegations set forth in paragraph 24 of the complaint.

## COUNT II

### (INFRINGEMENT OF U.S. PATENT NO. 7,941,174)

25. CCE incorporates paragraphs 1 through 14 herein by reference.

**Answer**: LG Electronics incorporates by reference the responses contained in paragraphs 1 through 14 of this answer.

26. CCE is the assignee of the '174 patent, entitled "Method for Multicode Transmission by a Subscriber Station," with ownership of all substantial rights in the '174 patent, including the right to exclude others and to enforce, sue and recover damages for past and future infringements. A true and correct copy of the '174 patent is attached as Exhibit D.

**Answer**: LG Electronics admits that Exhibit D to the complaint purports to be a copy of U.S. Patent No. 7,941,174 ("the '174 patent") entitled "Method for Multicode Transmission by a

Subscriber Station." LG Electronics is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 26 of the complaint and, therefore, denies those allegations.

27.     The '174 patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

**Answer**:   LG Electronics denies the allegations set forth in paragraph 27 of the complaint.

28.     Defendants LG, AT&T, and T-Mobile have and continue to directly and/or indirectly infringe (by inducing infringement and/or contributing to infringement) one or more claims of the '174 patent in this judicial district and elsewhere in Texas and the United States, including at least claims 1, 6, 9, 14, 18, and 19, by, among other things, making, using, offering for sale, selling and/or importing LG mobile devices, including, for example: the LG Escape 4G, the LG Nitro HD, the LG Optimus G, and the LG Optimus G Pro, sold or otherwise distributed by or through AT&T (the "'174 AT&T Mobile Devices"); and the LG DoublePlay, the LG G2X, the LG myTouch Q, the LG Nexus 4, and the LG Optimus L9, sold or otherwise distributed by or through T-Mobile (the "'174 T-Mobile Mobile Devices"). These devices are collectively referred to as the "'174 LG Devices."

**Answer**:   LG Electronics denies the allegations set forth in paragraph 28 of the complaint.

29.     Defendants directly infringe the apparatus claims of the '174 patent by making, offering to sell, selling, and/or importing the '174 LG Devices. Defendants also directly infringe the '174 patent by making, using, selling, offering to sell, and/or importing the '174 LG Devices to practice the claimed methods. Defendants are thereby liable for direct infringement.

**Answer**:   LG Electronics denies the allegations set forth in paragraph 29 of the complaint.

30.     Additionally, Defendants are liable for indirect infringement of the '174 patent because they induce and/or contribute to the direct infringement of the patent by their customers and other end users who use the '174 LG Devices to practice the claimed methods.

**Answer**:   LG Electronics denies the allegations set forth in paragraph 30 of the complaint.

31.     On information and belief, each Defendant is a 3GPP member organization, or is affiliated with a 3GPP member organization, and has known of the '174 patent at least as early as August 2010, when it was disclosed to 3GPP via ETSI.

**Answer**:   LG Electronics admits that LG Electronics, Inc. is a 3GPP member. LG Electronics denies that it has known of the '174 patent at least as early as August 2010.   LG Electronics is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 31 of the complaint and, therefore, denies such allegations.

32.     On information and belief, despite having knowledge of the '174 patent, Defendants named in this Count have and continue to specifically intend for persons who acquire and use such devices, including Defendants' customers, to use such devices in a manner that infringes the '174 patent, including at least claims 1, 6, 9, 14, 18, and 19. Defendants knew or should have known that their actions — including instructing customers and end users regarding use of the '174 LG Devices — have and continue to actively induce infringement.

**Answer**:   LG Electronics denies the allegations set forth in paragraph 32 of the complaint.

33.     On information and belief, Defendants named in this Count have known and know that their products accused of infringing include proprietary hardware components and software instructions that work in concert to perform specific, intended functions. Such specific, intended functions, carried out by these hardware and software combinations, are a material part of the inventions of the '174 patent and are not staple articles of commerce suitable for substantial non-infringing use.

**Answer**:   LG Electronics denies the allegations set forth in paragraph 33 of the complaint.

34.     Specifically, each of the '174 LG Devices contain at least a baseband processor which contains functionality that is specifically programmed and/or configured to maintain a transmit power difference as claimed in claims 1, 6, 9, 14, 18, and 19 of the '174 patent.

**Answer**:   LG Electronics denies the allegations set forth in paragraph 34 of the complaint.

35.     On information and belief, despite having knowledge of the '174 patent and knowledge that they are directly and/or indirectly infringing one or more claims of the '174 patent, Defendants named in this Count have nevertheless continued their infringing conduct and

10

disregarded an objectively high likelihood of infringement; thus, Defendants' infringing activities relative to the '174 patent have been, and continue to be, willful, wanton and deliberate in disregard of CCE's rights.

**Answer**: LG Electronics denies the allegations set forth in paragraph 35 of the complaint.

36.    On information and belief, LG and AT&T test, make, use, offer for sale, sell, and/or import the '174 AT&T Mobile Devices described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution and sale of such devices. Accordingly, LG and AT&T are jointly, severally, or alternatively liable for infringements described in this Count.

**Answer**:  LG Electronics denies the allegations set forth in paragraph 36 of the complaint.

37.    On information and belief, LG and T-Mobile test, make, use, offer for sale, sell, and/or import the '174 T-Mobile Mobile Devices described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution and sale of such devices. Accordingly, LG and T-Mobile are jointly, severally, or alternatively liable for infringements described in this Count.

**Answer**:  LG Electronics denies the allegations set forth in paragraph 37 of the complaint.

38.    CCE has been damaged as a result of Defendants' infringing conduct described in this Count. Defendants are, thus, liable to CCE in an amount that adequately compensates it for their infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**Answer**:  LG Electronics denies the allegations set forth in paragraph 38 of the complaint.

## COUNT III

### (INFRINGEMENT OF U.S. PATENT NO. 8,055,820)

39.    CCE incorporates paragraphs 1 through 14 herein by reference.

**Answer**:  LG Electronics incorporates by reference the responses contained in paragraphs 1 through 14 of this answer.

40.    CCE is the assignee of the '820 patent, entitled "Apparatus, System, and Method for Designating a Buffer Status Reporting Format Based on Detected Pre-Selected Buffer Conditions," with ownership of all substantial rights in the '820 patent, including the right to exclude others and to enforce, sue and recover damages for past and future infringements. A true and correct copy of the '820 patent is attached as Exhibit E.

**Answer**: LG Electronics admits that Exhibit E to the complaint purports to be a copy of

U.S. Patent No. 8,055,820 ("the '820 patent") entitled "Apparatus, System, and Method for

Designating a Buffer Status Reporting Format Based on Detected Pre-Selected Buffer

Conditions." LG Electronics is without knowledge or information sufficient to form a belief as

to the truth of the remaining allegations of paragraph 40 of the complaint and, therefore, denies

those allegations.

41.    The '820 patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

**Answer**: LG Electronics denies the allegations set forth in paragraph 41 of the

complaint.

42.    Defendants LG, AT&T, Verizon, Sprint, and T-Mobile have and continue to directly and/or indirectly infringe (by inducing infringement and/or contributing to infringement) one or more claims of the '820 patent in this judicial district and elsewhere in Texas and the United States, including at least claims 1, 4, 6, 9, 10, 12, 17, 20, 21, and 24, by, among other things, making, using, offering for sale, selling and/or importing LG mobile devices, including, for example: the LG Escape 4G, the LG Nitro HD, the LG Optimus G, and the LG Optimus G Pro, sold or otherwise distributed by or through AT&T (the "'820 AT&T Mobile Devices"); the LG Intuition, the LG Lucid 4G, the LG Lucid 2, the LG Revolution 4G, the LG Spectrum 4G, the LG Spectrum 2, and the LG VL600 Modem, sold or otherwise distributed by or through Verizon (the "'820 Verizon Mobile Devices"); the LG Mach 4G LTE, the LG Optimus G, and the LG Viper 4G LTE, sold or otherwise distributed by or through Sprint (the "'820 Sprint Mobile Devices"); and the LG Connect 4G, the LG Esteem 4G, the LG Motion 4G, and the LG Spirit 4G, sold or otherwise distributed by or through T-Mobile (the "'820 T-Mobile Mobile Devices"). These devices are collectively referred to as the "'820 LG Devices."

**Answer**: LG Electronics denies the allegations set forth in paragraph 42 of the

complaint.

43.    Defendants directly infringe the apparatus claims of the '820 patent by making, offering to sell, selling, and/or importing the '820 LG Devices. Defendants also directly infringe

the '820 patent by making, using, selling, offering to sell, and/or importing the '820 LG Devices to practice the claimed methods. Defendants are thereby liable for direct infringement.

**Answer**:   LG Electronics denies the allegations set forth in paragraph 43 of the complaint.

44.     Additionally, Defendants are liable for indirect infringement of the '820 patent because they induce and/or contribute to the direct infringement of the patent by their customers and other end users who use the '820 LG Devices to practice the claimed methods.

**Answer**:   LG Electronics denies the allegations set forth in paragraph 44 of the complaint.

45.     On information and belief, each Defendant is a 3GPP member organization, or is affiliated with a 3GPP member organization, and has known of the '820 patent at least as early as June 2009, when it was disclosed to 3GPP via ETSI.

**Answer**:   LG Electronics admits that LG Electronics, Inc. is a 3GPP member. LG Electronics denies that it has known of the '820 patent at least as early as June 2009.  LG Electronics is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 45 of the complaint and, therefore, denies such allegations.

46.     On information and belief, despite having knowledge of the '820 patent, Defendants named in this Count have and continue to specifically intend for persons who acquire and use such devices, including Defendants' customers, to use such devices in a manner that infringes the '820 patent, including at least claims 1, 4, 6, 9, 10, 12, 17, 20, 21, and 24. Defendants knew or should have known that their actions — including instructing customers and end users regarding use of the '820 LG Devices — have and continue to actively induce infringement.

**Answer**:   LG Electronics denies the allegations set forth in paragraph 46 of the complaint.

47.     On information and belief, Defendants named in this Count have known and know that their products accused of infringing include proprietary hardware components and software instructions that work in concert to perform specific, intended functions. Such specific, intended functions, carried out by these hardware and software combinations, are a material part of the inventions of the '820 patent and are not staple articles of commerce suitable for substantial non-infringing use.

**Answer**:  LG Electronics denies the allegations set forth in paragraph 47 of the complaint.

48.    Specifically, each of the '820 LG Devices contain at least a baseband processor and associated transceiver which contain functionality that is specifically programmed and/or configured to monitor the usage of a plurality of buffers, detect certain pre-selected conditions, designate buffer status reporting formats, and communicate buffer status reports as claimed in claims 1, 4, 6, 9, 10, 12, 17, 20, 21, and 24 of the '820 patent.

**Answer**:  LG Electronics denies the allegations set forth in paragraph 48 of the complaint.

49.    On information and belief, despite having knowledge of the '820 patent and knowledge that they are directly and/or indirectly infringing one or more claims of the '820 patent, Defendants named in this Count have nevertheless continued their infringing conduct and disregarded an objectively high likelihood of infringement; thus, Defendants' infringing activities relative to the '820 patent have been, and continue to be, willful, wanton and deliberate in disregard of CCE's rights.

**Answer**:  LG Electronics denies the allegations set forth in paragraph 49 of the complaint.

50.    On information and belief, LG and AT&T test, make, use, offer for sale, sell, and/or import the '820 AT&T Mobile Devices described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution and sale of such devices. Accordingly, LG and AT&T are jointly, severally, or alternatively liable for infringements described in this Count.

**Answer**:  LG Electronics denies the allegations set forth in paragraph 50 of the complaint.

51.    On information and belief, LG and Verizon test, make, use, offer for sale, sell, and/or import the '820 Verizon Mobile Devices described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution and sale of such devices. Accordingly, LG and Verizon are jointly, severally, or alternatively liable for infringements described in this Count.

**Answer**:  LG Electronics denies the allegations set forth in paragraph 51 of the complaint.

52.    On information and belief, LG and Sprint test, make, use, offer for sale, sell, and/or import the '820 Sprint Mobile Devices described in this Count, pursuant to one or more

contractual agreements between them relating to, at least, the distribution and sale of such devices. Accordingly, LG and Sprint are jointly, severally, or alternatively liable for infringements described in this Count.

**Answer**: LG Electronics denies the allegations set forth in paragraph 52 of the complaint.

53.    On information and belief, LG and T-Mobile test, make, use, offer for sale, sell, and/or import the '820 T-Mobile Mobile Devices described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution and sale of such devices. Accordingly, LG and T-Mobile are jointly, severally, or alternatively liable for infringements described in this Count.

**Answer**: LG Electronics denies the allegations set forth in paragraph 53 of the complaint.

54.    CCE has been damaged as a result of Defendants' infringing conduct described in this Count. Defendants are, thus, liable to CCE in an amount that adequately compensates it for their infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**Answer**: LG Electronics denies the allegations set forth in paragraph 54 of the complaint.

## COUNT IV

### (INFRINGEMENT OF U.S. PATENT NO. 7,218,923)

55.    CCE incorporates paragraphs 1 through 14 herein by reference.

**Answer**: LG Electronics incorporates by reference the responses contained in paragraphs 1 through 14 of this answer.

56.    CCE is the assignee of the '8923 patent, entitled "Control of Terminal Applications in a Network Environment," with ownership of all substantial rights in the '8923 patent, including the right to exclude others and to enforce, sue and recover damages for past and future infringements. A true and correct copy of the '8923 patent is attached as Exhibit F.

**Answer**: LG Electronics admits that Exhibit F to the complaint purports to be a copy of U.S. Patent No. 7,218,923 ("the '8923 patent") entitled "Control of Terminal Applications in a Network Environment."  LG Electronics is without knowledge or information sufficient to form

a belief as to the truth of the remaining allegations of paragraph 56 of the complaint and, therefore, denies those allegations.

57.     The '8923 patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

**Answer**:   LG Electronics denies the allegations set forth in paragraph 57 of the complaint.

58.     Defendants LG, AT&T, Verizon, Sprint, and T-Mobile have and continue to directly infringe one or more claims of the '8923 patent in this judicial district and elsewhere in Texas and the United States, including at least claims 24 and 26, by, among other things, making, using, offering for sale, selling and/or importing LG mobile devices, including, for example: the LG Optimus G Pro, the LG Optimus G, and the LG Escape, sold or otherwise distributed by or through AT&T (the "'8923 AT&T Mobile Devices"); the LG Lucid 2, the LG Spectrum 2, and the LG Intuition, sold or otherwise distributed by or through Verizon (the "'8923 Verizon Mobile Devices"), the LG Optimus G, sold or otherwise distributed by or through Sprint (the "'8923 Sprint Mobile Devices"), and the LG Spirit, the LG Nexus 4, the LG Optimus L9, and the LG Motion, sold or otherwise distributed by or through T-Mobile (the "'8923 T-Mobile Mobile Devices"). These devices are collectively referred to as the "'8923 LG Devices."

**Answer**:   LG Electronics denies the allegations set forth in paragraph 58 of the complaint.

59.     Defendants directly infringe the apparatus claims of the '8923 patent by making, offering to sell, selling, and/or importing the '8923 LG Devices. Defendants are thereby liable for direct infringement.

**Answer**:   LG Electronics denies the allegations set forth in paragraph 59 of the complaint.

60.     On information and belief, LG and AT&T test, make, use, offer for sale, sell, and/or import '8923 AT&T Mobile Devices described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution and sale of such devices. Accordingly, LG and AT&T are jointly, severally, or alternatively liable for infringements described in this Count.

**Answer**:   LG Electronics denies the allegations set forth in paragraph 60 of the complaint.

61.     On information and belief, LG and Verizon test, make, use, offer for sale, sell, and/or import '8923 Verizon Mobile Devices described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution and sale of such devices. Accordingly, LG and Verizon are jointly, severally, or alternatively liable for infringements described in this Count.

**Answer**:    LG Electronics denies the allegations set forth in paragraph 61 of the

complaint.

62.     On information and belief, LG and Sprint test, make, use, offer for sale, sell, and/or import '8923 Sprint Mobile Devices described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution and sale of such devices. Accordingly, LG and Sprint are jointly, severally, or alternatively liable for infringements described in this Count.

**Answer**:    LG Electronics denies the allegations set forth in paragraph 62 of the

complaint.

63.     On information and belief, LG and T-Mobile test, make, use, offer for sale, sell, and/or import '8923 T-Mobile Mobile Devices described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution and sale of such devices. Accordingly, LG and T-Mobile are jointly, severally, or alternatively liable for infringements described in this Count.

**Answer**:    LG Electronics denies the allegations set forth in paragraph 63 of the

complaint.

64.     CCE has been damaged as a result of Defendants' infringing conduct described in this Count. Defendants are, thus, liable to CCE in an amount that adequately compensates it for their infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**Answer**:    LG Electronics denies the allegations set forth in paragraph 64 of the

complaint.

## **COUNT V**

### (INFRINGEMENT OF U.S. PATENT NO. 6,810,019)

65.     CCE incorporates paragraphs 1 through 14 herein by reference.

**Answer**: LG Electronics incorporates by reference the responses contained in paragraphs 1 through 14 of this answer.

66.     CCE is the assignee of the '019 patent, entitled "Reducing Interference in Inter-Frequency Measurement," with ownership of all substantial rights in the '019 patent, including the right to exclude others and to enforce, sue and recover damages for past and future infringements. A true and correct copy of the '019 patent is attached as Exhibit G.

**Answer**: LG Electronics admits that Exhibit G to the complaint purports to be a copy of U.S. Patent No. 6,810,019 ("the '019 patent") entitled "Reducing Interference in Inter-Frequency Measurement." LG Electronics is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 66 of the complaint and, therefore, denies those allegations.

67.     The ' 019 patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

**Answer**: LG Electronics denies the allegations set forth in paragraph 67 of the complaint.

68.     Defendants LG, AT&T, and T-Mobile have and continue to directly infringe one or more claims of the '019 patent in this judicial district and elsewhere in Texas and the United States, including at least claims 11, 12, and 13, by, among other things, making, using, offering for sale, selling and/or importing LG mobile devices, including, for example: the LG Escape 4G, the LG Nitro HD, the LG Optimus G, and the LG Optimus G Pro, sold or otherwise distributed by or through AT&T (the "'019 AT&T Mobile Devices"); and the LG DoublePlay, the LG G2X, the LG myTouch Q, the LG Nexus 4, and the LG Optimus L9, sold or otherwise distributed by or through T-Mobile (the "'019 T-Mobile Mobile Devices"). These devices are collectively referred to as the "'019 LG Devices."

**Answer**: LG Electronics denies the allegations set forth in paragraph 68 of the complaint. LG Electronics further states that, on June 24, 2015, the Patent Trial and Appeal Board ("PTAB") ordered that claims 11-13 of the '019 patent will be cancelled, vitiating those claims and rendering CCE's allegations concerning them moot. *See* Plaintiff Cellular Communications Equipment LLC's Notice Regarding Cancellation of Asserted Claims, Case No. 6:13-cv-00507, Docket No. 427.

69. Defendants directly infringe the apparatus claims of the '019 patent by making, offering to sell, selling, and/or importing the '019 LG Devices. Defendants are thereby liable for direct infringement.

**Answer**: LG Electronics denies the allegations set forth in paragraph 69 of the complaint.

70. On information and belief, each Defendant is a 3GPP member organization, or is affiliated with a 3GPP member organization, and has known of the '019 patent at least as early as May 2009, when it was disclosed to 3GPP via ETSI.

**Answer**: LG Electronics admits that LG Electronics, Inc. is a 3GPP member. LG Electronics denies that it has known of the '019 patent at least as early as May 2009. LG Electronics is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 70 of the complaint and, therefore, denies such allegations.

71. On information and belief, despite having knowledge of the '019 patent and knowledge that they are directly infringing one or more claims of the '019 patent, Defendants named in this Count have nevertheless continued their infringing conduct and disregarded an objectively high likelihood of infringement; thus, Defendants' infringing activities relative to the '019 patent have been, and continue to be, willful, wanton and deliberate in disregard of CCE's rights.

**Answer**: LG Electronics denies the allegations set forth in paragraph 71 of the complaint.

72. On information and belief, LG and AT&T test, make, use, offer for sale, sell, and/or import '019 AT&T Mobile Devices described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution and sale of such devices. Accordingly, LG and AT&T are jointly, severally, or alternatively liable for infringements described in this Count.

**Answer**: LG Electronics denies the allegations set forth in paragraph 72 of the complaint.

73. On information and belief, LG and T-Mobile test, make, use, offer for sale, sell, and/or import '019 T-Mobile Mobile Devices described in this Count, pursuant to one or more contractual agreements between them relating to, at least, the distribution and sale of such

devices. Accordingly, LG and T-Mobile are jointly, severally, or alternatively liable for infringements described in this Count.

**Answer**: LG Electronics denies the allegations set forth in paragraph 73 of the

complaint.

74.     CCE has been damaged as a result of Defendants' infringing conduct described in this Count. Defendants are, thus, liable to CCE in an amount that adequately compensates it for their infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**Answer**: LG Electronics denies the allegations set forth in paragraph 74 of the

complaint.

## **JOINDER OF PARTIES**

75.     CCE incorporates paragraphs 1 through 74 herein by reference.

**Answer**: LG Electronics incorporates by reference the responses contained in paragraphs

1 through 74 of this answer.

76.     On information and belief, AT&T, Verizon, Sprint, and T-Mobile have each purchased or otherwise acquired from LG certain mobile devices for sale, resale, and/or distribution to their customers (and other end users) that are the subject of Counts I through V (or some subset thereof). Thus, for these Counts, the right to relief against AT&T, Verizon, Sprint, and/or T-Mobile is asserted jointly and severally with LG.

**Answer**: LG Electronics admits that AT&T, Verizon, Sprint, and T-Mobile have each

purchased or otherwise acquired from LG certain mobile devices.   LG Electronics admits that

the right to relief against AT&T, Verizon, Sprint, and/or T-Mobile is asserted jointly and

severally with LG Electronics in the complaint. LG Electronics is without knowledge or

information sufficient to form a belief as to the truth of the remaining allegations contained in

paragraph 76 of the complaint and, therefore, denies such allegations.

77.     The alleged infringements set forth in Counts I through V arise out of the same transaction, occurrence, or series of transactions or occurrences relating to the testing, making, using, offering for sale, selling, and/or importing of the LG mobile devices made the subject of Counts I through V.

**Answer**:   LG Electronics denies that is has committed acts of infringement.   LG Electronics is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 77 of the complaint and, therefore, denies such allegations.

78.      Questions of fact common to all Defendants will arise in this action including, for example, infringement by, or through use of, LG mobile devices.

**Answer**:   LG Electronics denies that is has committed acts of infringement.   LG Electronics is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 78 of the complaint and, therefore, denies such allegations.

79.      Thus, joinder of LG, AT&T, Verizon, Sprint, and T-Mobile is proper in this litigation pursuant to 35 U.S.C. § 299(a).

**Answer**:   LG Electronics denies the allegations set forth in paragraph 79 of the complaint.

## JURY DEMAND

80.      LG Electronics admits that plaintiff demands a trial by jury, but denies that plaintiff is entitled to any relief that it has requested in its complaint.

## RESPONSE TO PLAINTIFF'S PRAYER FOR RELIEF

81.      LG Electronics denies that plaintiffs are entitled to any of the relief that they have requested in their complaint.

## LG ELECTRONICS' AFFIRMATIVE DEFENSES

82.      Without prejudice to the denials set forth in this Answer, and without admitting any allegations of the Second Amended Complaint not otherwise admitted, LG Electronics avers and asserts the following affirmative defenses without assuming any burden of proof that rightfully should be placed on plaintiff.

83.    LG Electronics reserves the right to amend this Answer to assert additional affirmative defenses that may be revealed during discovery.

### FIRST DEFENSE

84.    CCE fails to state a claim against LG Electronics upon which relief can be granted.

### SECOND DEFENSE

85.    LG Electronics does not infringe and has not infringed, directly or indirectly, contributively, willfully, by inducement, or otherwise, any valid claim of any of the '9923, '174, '820, '8923, and '019 patents, either literally or under the doctrine of equivalents, and has not otherwise committed any act in violation of 35 U.S.C. § 271, et seq.

### THIRD DEFENSE

86.    The '9923, '174, '820, '8923, and '019 patents are invalid and/or unenforceable for failure to satisfy one or more of the conditions and requirements for patentability set forth in the patent laws of the United States Code, including without limitation 35 U.S.C. §§ 101, 102, 103, 112, and/or 116, and the Rules of the United States Patent and Trademark Office, Title 37, Code of Federal Regulations.

### FOURTH DEFENSE

87.    CCE is wholly or partially barred from the relief it seeks based upon the principles and doctrines of waiver, laches, unclean hands, acquiescence, and/or any other equitable remedy.

### FIFTH DEFENSE

88.    CCE is estopped from asserting its claims against LG Electronics in whole or in part, under the doctrines of prosecution history estoppel and equitable estoppel.

## SIXTH DEFENSE

89.     CCE's claims are barred, in whole or in part, as a result of express or implied licenses and/or under the doctrine of patent exhaustion.

## SEVENTH DEFENSE

90.     To the extent that any licensee under the patents-in-suit has an obligation to mark and has failed to do so, each of CCE's claims for relief are barred, in whole or in part, under 35 U.S.C. § 287.

## EIGHTH DEFENSE

91.     CCE lacks standing to bring the claims asserted in the Complaint.

## NINTH DEFENSE

92.     CCE's claims for relief and prayer for damages are statutorily limited by 35 U.S.C. §§ 286, 287, and/or 288, and/or 28 U.S.C. § 1498.

## TENTH DEFENSE

93.     CCE's claims are barred, in whole or in part, as a result of CCE's failure to join one or more necessary and/or indispensable parties.

## ELEVENTH DEFENSE

### (Unenforceability of the '820 Patent due to implied waiver)

94.     CCE and/or its predecessors-in-interest with respect to one or more of the Asserted Patents have engaged in standards-setting misconduct, including without limitation breach of the commitment to license one or more of the Asserted Patents on fair, reasonable, and nondiscriminatory terms and CCE's breach of its patent disclosure requirements or based on other circumstances.

95.     At various times, Nokia Siemens Networks ("NSN"), a predecessor-in-interest of CCE, declared the '820 and '174 Patents to the European Telecommunications Standards

23

Institute ("ETSI"), a leading standard-setting organization ("SSO"), as purportedly essential to practice the Universal Mobile Telecommunications Standard ("UMTS") standard, the world's most widely adopted telecommunications standard. (The patents NSN has declared essential to the UMTS standard are referred to collectively herein as the "Declared-Essential Patents"). Time and again, however, NSN deliberately and deceptively failed to disclose its purported intellectual property rights ("IPR") to the Third Generation Platform Partnership ("3GPP"), the SSO that set the UMTS standard, before its members decided to incorporate into the standard technologies purportedly covered by NSN's patents, in violation of ETSI's IPR policy. Furthermore, NSN issued a written declaration to the SSO, committing to license its Declared-Essential Patents to all implementers of the UMTS standard on fair, reasonable, and non-discriminatory ("FRAND") terms, but when 3GPP was considering alternative technologies, deliberately and deceptively concealed from 3GPP and its constituent SSOs that it in fact would not offer FRAND license terms. Accordingly, as to all patents CCE and NSN has declared essential to the UMTS standard, LG Electronics is at the very least entitled to a license on FRAND terms.

96. The 3GPP is a collaborative project that develops globally applicable standard specifications for third generation ("3G") mobile phones and other telecommunications systems.

97. 3GPP was established on or around December 1998.

98. 3GPP's standardization efforts include Third Generation Wideband Code Division Multiple Access cellular standards.

99. 3GPP is composed of Organizational Partners and Individual Members. Organizational Partners are standard-setting organizations. The ETSI is an Organizational Partner of 3GPP. The Individual Members of 3GPP are members of the Organizational Partners of 3GPP, including members of ETSI.

100.    On information and belief supported by publicly available documents, CCE's predecessor-in-interest NSN has been a member of ETSI and 3GPP.

101.    As an individual member of 3GPP, CCE's predecessor-in-interest NSN was required to comply with 3GPP's intellectual property rights policy ("IPR Policy").

102.    On information and belief supported by publicly available documents, CCE's predecessor-in-interest Siemens AG has been a member of ETSI and 3GPP.

103.    As an individual member of 3GPP, CCE's predecessor-in-interest Siemens AG was required to comply with 3GPP's IPR Policy.

104.    On information and belief supported by publicly available documents, 3GPP's IPR Policy states that its Individual Members are bound by the IPR Policy of their respective Organizational Partner. 3GPP's IPR Policy requires its Individual Members to declare to their Organizational Partners any IPR that they believe to be essential, or potentially essential, to any work being conducted within 3GPP; the IPR Policy also requires Organizational Partners to "encourage their respective members to grant licenses on fair, reasonable terms and conditions and on a non-discriminatory basis."

105.    As members of ETSI, CCE's predecessor-in-interest NSN was required to comply with ETSI's IPR Policy.

106.    To facilitate its standard setting activity, ETSI promulgated an IPR policy, set forth in Annex 6 of its Rules of Procedure.

107.    Clause 4 of the policy requires, among other things, that members timely disclose to the organization any IPR they own that may be essential to standards that have been developed or are being developed. Participants in ETSI standard development understand that this provision requires disclosure of all IPR that they believe might be essential to standards under

consideration. Clause 4 requires in particular that a participant submitting a technical specification to ETSI, as NSN did, make ETSI aware of any IPR that might be essential if that proposal is adopted. Clause 4.1 states:

> [E]ach MEMBER shall use its reasonable endeavors, in particular during the development of a STANDARD or TECHNICAL SPECIFICATION where it participates, to inform ETSI of ESSENTIAL IPRs in a timely fashion. In particular, a MEMBER submitting a technical proposal for a STANDARD or TECHNICAL SPECIFICATION shall, on a bona fide basis, draw the attention of ETSI to any of that MEMBER's IPR which might be ESSENTIAL if that proposal is adopted.

108.    Under ETSI's IPR policies, the term "IPR" is defined to include patent applications as well as issued patents:

> "IPR" shall mean any intellectual property right conferred by statute law including applications therefore other than trademarks.

109.    Clause 6 of ETSI's IPR policy governs the availability of licenses to essential IPR. In relevant part, Clause 6.1 states:

> When an ESSENTIAL IPR relating to a particular STANDARD or TECHNICAL SPECIFICATION is brought to the attention of ETSI, the Director-General of ETSI shall immediately request the owner to give within three months an irrevocable undertaking in writing that it is prepared to grant irrevocable licenses on fair, reasonable and non-discriminatory [FRAND] terms and conditions under such IPR to at least the following extent:
>
> • MANUFACTURE, including the right to make or have made customized components and sub-systems to the licensee's own design for use in MANUFACTURE;
>
> • sell, lease, or otherwise dispose of EQUIPMENT so MANUFACTURED;
>
> • repair, use, or operate EQUIPMENT; and
>
> • use METHODS.

110.    The above undertaking may be made subject to the condition that those who seek licenses agree to reciprocate.

111.    If an owner of an essential IPR refuses to undertake a FRAND commitment with respect to that IPR, then, as provided in Section 8 of the ETSI IPR Policy, ETSI may suspend work on relevant parts of the standard or redesign the standard to render the IPR non-essential.

112.    ETSI's IPR Policy was designed to benefit all ETSI members, as well as all other parties that implement an ETSI standard. In particular, the stated objective of the policy, described in Clause 3.1, is to "reduce the risk" to those implementing the standards or other technical specifications "that investment in the preparation, adoption and application of the STANDARDS could be wasted as a result of an ESSENTIAL IPR for a STANDARD or TECHNICAL SPECIFICATION being unavailable." The IPR Policy specifies that it "shall be governed by the laws of France." Clause 12.

113.    During all times relevant to these allegations, NSN and Siemens have been members of ETSI. NSN and Siemens actively participated in 3GPP's development of the UMTS standard. As a result of its membership in ETSI and participation in 3GPP's standard-setting process for UMTS, CCE's predecessors NSN and Siemens were bound by the ETSI Rules of Procedure, including the ETSI IPR Policy. As was required by the ETSI IPR policy, NSN submitted declarations to ETSI promising to license its Declared-Essential Patents on FRAND terms.

114.    CCE has alleged that certain products having wireless capability compliant with 3GPP TS 36.321 § 5.4.5 infringe the '820 Patent.

115.    CCE has represented that it is the owner or assignee of the '820 Patent.

116.    The '820 Patent issued from Application No. 12/289,825 filed on November 5, 2008.

117.    The '820 Patent claims priority to Provisional Application No. 60/996,169, filed on November 5, 2007.

118.    On information and belief supported by publicly available documents, NSN is a predecessor-in-interest of CCE with respect to the '820 Patent and its related applications.

119.    3GPP is composed of specification groups responsible for drafting and amending technical specifications associated with the 3GPP.

120.    3GPP specification group TSG RAN WG2 ("WG2") was formed on or around January 1999. WG2 was responsible for the Radio Interface architecture and protocols (MAC, RLC, PDCP), the specification of the Radio Resource Control protocol, the strategies of Radio Resource Management and the services provided by the physical layer to the upper layers.   In particular, WG2 was responsible for drafting 3GPP Technical Specification ("TS") 36.321.  CCE has alleged that certain products having wireless capability compliant with TS 36.321standards infringe the '820 Patent.

121.    On information and belief supported by publicly available documents, representatives of NSN attended WG2 meetings and participated in drafting and revising TS 36.321. For example, the following NSN employees attended WG2 meetings:  Kristan Barraclough, David Randall, Benoist Sebire, Thomas Stadler, Manivannan Thyagarajajn, and Markus Wimmer.

122.    On information and belief supported by publicly available documents, at the beginning of each WG2 and TSG RAN Plenary meeting, the Chairman of the meeting made the following IPR call:

> The attention of the delegates of this Working Group was drawn to the fact that 3GPP Individual Members have the obligation under the IPR Policies of their respective Organizational Partners to inform their respective Organizational Partners of Essential IPRs they become aware of.

The delegates were asked to take note that they were hereby invited:

- to investigate whether their organization or any other organization owns IPRs which were, or were likely to become Essential in respect of the work of 3GPP.

- to notify their respective Organizational Partners of all potential IPRs, e.g., for ETSI, by means of the IPR Statement and the Licensing declaration forms (http://webapp.etsi.org/Ipr/).

123.    On or about January 14-18, 2008, the TSG-RAN WG2 group met for meeting #60bis in Sevilla, Spain in connection with the standards-setting process.

124.    On information and belief supported by publicly available documents, representatives of CCE's predecessor NSN, including Benoist Sebire, attended the January 2008 meeting in Sevilla.

125.    Benoist Sebire is the named inventor on the '820 Patent.

126.    On information and belief supported by publicly available documents, Benoist Sebire on behalf of NSN presented documents for discussion during the meeting.

127.    On or about January 7, 2008, Benoist Sebire on behalf of NSN submitted "Criteria for Short and Long BSR" and "MAC Padding" in anticipation of the upcoming January 2008 Sevilla meeting.

128.    On or about February 11-15, 2008, the TSG-RAN WG2 group met for meeting #61 in Sorrento, Italy in connection with the standards-setting process.

129.    On information and belief supported by publicly available documents, representatives of CCE's predecessor NSN, including Benoist Sebire, attended the February 2008 meeting in Sorrento.

130.    On or about March 4-7, 2008, the TSG-RAN plenary group met for meeting #39 in Puerto Vallarta, Mexico in connection with the standards-setting process.

131.    On information and belief supported by publicly available documents, representatives of CCE's predecessor NSN, including Peter Schmitt and Alexander Vesely, attended the March 2008 meeting in Puerto Vallarta.

132.    On or about August 18-22, 2008, the TSG-RAN WG2 group met for meeting #63 in Jeju Island, Korea in connection with the standards-setting process.

133.    On information and belief supported by publicly available documents, representatives of CCE's predecessor NSN, including Benoist Sebire, attended the August 2008 meeting in Jeju Island.

134.    On or about August 12, 2008, Benoist Sebire on behalf of NSN, along with others, submitted "LCID for Padding BSR" and other change requests directed towards Padding BSR and Short BSR format in anticipation of the August 2008 Jeju Island meeting.

135.    On or about September 9-12, 2008, the TSG-RAN plenary group met for meeting #41 in Kobe, Japan in connection with the standards-setting process.

136.    On information and belief supported by publicly available documents, representatives of CCE's predecessor NSN, including Jiang Chang, Benoist Sebire and Alexander Vesely, attended the September 2008 meeting in Kobe.

137.    Numerous proposals had been submitted to the 3GPP for consideration prior to the September 2008 TSG-RAN #41 meeting in Kobe, including proposals from CCE's predecessor Nokia, Ericsson, Qualcomm, Alcatel-Lucent, and LG Electronics.

138.    On or about September 9-12, 2008, the TSG RAN group voted in favor of incorporating the NSN Proposal into TS 36.321 § 5.4.5.

139.    NSN waited until June 15, 2009 to declare the '820 Patent as relevant to TS 36.321 § 5.4.5.

140.     CCE's predecessor NSN had a duty to disclose the '820 Patent as essential to standards drafted and revised in WG2 and TSG RAN Plenary groups as a result of its membership in ETSI and 3GPP, including its obligations to disclose essential IPRs under the IPR policies of ETSI and 3GPP.

141.     On information and belief supported by publicly available documents, CCE's predecessor NSN breached its duty to disclose the '820 Patent intentionally and knowingly delayed disclosing the '820 Patent as essential, or potentially essential, to the specifications being drafted and revised at WG2 and the TSG RAN Plenary groups.

142.     On information and belief supported by publicly available documents, the foregoing delay to disclose the '820 Patent was made in bad faith with the intent to deceive and induce reliance.

143.     The foregoing actions and conduct have caused damage and continue to cause damage to LG Electronics and relevant third-parties.

144.     Accordingly, the '820 Patent is unenforceable due to implied waiver.

## TWELFTH DEFENSE

### (Unenforceability of the '820 Patent due to equitable estoppel)

145.     LG Electronics incorporates by reference paragraphs 1-144 above.

146.     CCE's predecessor NSN had a duty to disclose the '820 Patent as essential to standards drafted and revised in WG2 and TSG RAN Plenary groups as a result of its membership in ETSI and 3GPP, including its obligations to disclose essential IPRs under the IPR policies of ETSI and 3GPP.

147.     On information and belief supported by publicly available documents, CCE's predecessor NSN breached its duty to disclose the '820 Patent intentionally and knowingly

delayed disclosing the '820 Patent as essential, or potentially essential, to the specifications being drafted and revised at WG2 and the TSG RAN Plenary groups.

148.   On information and belief supported by publicly available documents, the foregoing delay to disclose the '820 Patent was made in bad faith with the intent to deceive and induce reliance.

149.   On information and belief supported by publicly available documents, CCE's predecessor NSN's delay in disclosing the '820 Patent led to the adoption and propagation of 3GPP standards without consideration of the '820 Patent.

150.   As a consequence of CCE's predecessor NSN's delay in disclosing the '820 Patent, ETSI members, 3GPP members, their successors, and customers throughout the supply chain, including LG Electronics and relevant third parties, thereafter designed, manufactured, and marketed products meant to comply with those 3G cellular standards, thereby reasonably and justifiably relying on CCE's predecessor NSN's promises to abide by ETSI and 3GPP IPR Policies, to their detriment.

151.   As a consequence of CCE's predecessor NSN's delay in disclosing the '820 Patent, ETSI members, 3GPP members, their successors, and customers throughout the supply chain, including LG Electronics and relevant third parties, thereafter designed, manufactured, and marketed products meant to comply with those 3G cellular standards, thereby reasonably inferred that NSN did not intend to enforce the '820 Patent against potential infringers.

152.   The foregoing actions and conduct have caused damage and continue to cause damage to LG Electronics and relevant third-parties.

153.   Accordingly, the '820 Patent is unenforceable due to equitable estoppels.

**THIRTEENTH DEFENSE**

**(Unenforceability of the '174 Patent due to implied waiver)**

154.     LG Electronics incorporates by reference paragraphs 1-153 above.

155.     CCE has alleged that certain products having wireless capability compliant with 3GPP TS 25.213, TS 25.215, TS 25.133, and TS 25.214  infringe the '174 Patent.

156.     CCE has represented that it is the owner or assignee of the '174 Patent.

157.     The '174 Patent issued from Application No. 11/667,595 filed on December 22, 2008.    Application No. 11/667,595 was the US filling of International Application No. PCT/EP2005/055037 filed on Oct. 6, 2005.

158.     The '174 Patent claims priority to DE 10 2004 054626, filed on November 11, 2004.

159.     On information and belief supported by publicly available documents, Siemens is a predecessor-in-interest of CCE with respect to the '174 Patent and its related applications.

160.     On information and belief supported by publicly available documents, NSN is a predecessor-in-interest of CCE with respect to the '174 Patent and its related applications.

161.     3GPP is composed of specification groups responsible for drafting and amending technical specifications associated with the 3GPP.

162.     3GPP specification group TSG RAN WG1 ("WG1") was formed on or around January 1999. WG1 was responsible for the specification of the physical layer of the radio Interface for UE, UTRAN, Evolved UTRAN, and beyond; covering both FDD and TDD modes of the radio interface.  In particular, WG1 was responsible for drafting 3GPP TS 25.215.  CCE has alleged that certain products having wireless capability compliant with 25.215 standards infringe the '174 Patent.

163.    On information and belief supported by publicly available documents, representatives of Siemens and NSN attended WG1 meetings and participated in drafting and revising 25.215.   For example, the following Siemens and NSN employees attended WG1 meetings:   Thomas Chapman, Mieszko Chmiel, Prezemyslaw Czerepinski, Heino Gerlach, Thomas Hindelang, Joern Krause, Jürgen Michel, and Malgorzata Wimmer.

164.    On information and belief supported by publicly available documents, at the beginning of each WG1 and TSG RAN Plenary meeting, the Chairman of the meeting made the following IPR call:

> The attention of the delegates of this Working Group was drawn to the fact that 3GPP Individual Members have the obligation under the IPR Policies of their respective Organizational Partners to inform their respective Organizational Partners of Essential IPRs they become aware of.
> The delegates were asked to take note that they were hereby invited:
>
> - to investigate whether their organization or any other organization owns IPRs which were, or were likely to become Essential in respect of the work of 3GPP.
>
> - to notify their respective Organizational Partners of all potential IPRs, e.g., for ETSI, by means of the IPR Statement and the Licensing declaration forms (http://webapp.etsi.org/Ipr/).

165.    On or about August 29-September 2, 2005, the TSG-RAN WG1 group met for meeting #42 in London, United Kingdom in connection with the standards-setting process.

166.    On information and belief supported by publicly available documents, representatives of CCE's predecessors Siemens and NSN, including Thomas Chapman, Mieszko Chmiel, Prezemyslaw Czerepinski, Heino Gerlach, Joern Krause, Jürgen Michel, and Malgorzata Wimmer, attended the August-September 2005 meeting in London.

167.    On information and belief supported by publicly available documents, there were significant discussion and changes made to TS 25.215 during the August-September 2005 meeting.

168.    On or about September 19-23, 2005, the TSG-RAN Plenary group met for meeting #29 in Tallinn, Estonia in connection with the standards-setting process.

169.    On information and belief supported by publicly available documents, representatives of CCE's predecessors Siemens and NSN, including Joerg Gustrau and Thomas Ulrich, attended the August-September 2005 meeting in Tallinn.

170.    Thomas Ulrich is a named inventor on the '174 Patent.

171.    On information and belief supported by publicly available documents, there were significant changes to TS 25.215 were approved during the September 2005 meeting in Tallinn.

172.    3GPP specification group TSG RAN WG4 ("WG4") was formed on or around January 1999. WG4 was responsible for the RF aspects of UTRAN/E-UTRAN. RAN WG4 performs simulations of diverse RF system scenarios and derives the minimum requirements for transmission and reception parameters, and for channel demodulation.  In particular, WG4 was responsible for drafting 3GPP TS 25.133.  CCE has alleged that certain products having wireless capability compliant with 25.133 standards infringe the '174 Patent.

173.    On information and belief supported by publicly available documents, representatives of Siemens and NSN attended WG4 meetings and participated in drafting and revising 25.133.   For example, the following Siemens and NSN employees attended WG4 meetings:  Iwajlo Angelow, Philip Booker, Volker Breuer, Walter Kunz, and Frank Lamprecht.

174.    On information and belief supported by publicly available documents, at the beginning of each WG4 meeting, the Chairman of the meeting made the following IPR call:

The attention of the delegates of this Working Group was drawn to the fact that 3GPP Individual Members have the obligation under the IPR Policies of their respective Organizational Partners to inform their respective Organizational Partners of Essential IPRs they become aware of.

The delegates were asked to take note that they were hereby invited:

- to investigate whether their organization or any other organization owns IPRs which were, or were likely to become Essential in respect of the work of 3GPP.

- to notify their respective Organizational Partners of all potential IPRs, e.g., for ETSI, by means of the IPR Statement and the Licensing declaration forms (http://webapp.etsi.org/Ipr/).

175.    On or about November 17-21, 2005, the TSG-RAN WG4 group met for meeting #37 in Seoul, Korea in connection with the standards-setting process.

176.    On information and belief supported by publicly available documents, representatives of CCE's predecessors Siemens and NSN, including Volker Breuer, attended the November 2005 meeting in Seoul.

177.    Volker Breuer is a named inventor on the '174 Patent.

178.    On information and belief supported by publicly available documents, there were significant discussion and changes made to TS 25.133 during the November 2005 meeting in Seoul.

179.    On or about November 29-December 2, 2005, the TSG-RAN plenary group met for meeting #30 in St. Julian, Malta in connection with the standards-setting process.

180.    On information and belief supported by publicly available documents, representatives of CCE's predecessors Siemens and NSN, including Joerg Gustrau, attended the November 2005 meeting in St. Julian.

181.    On information and belief supported by publicly available documents, there were changes made to TS 25.133 during the November 2005 meeting in St. Julian.

182.    On or about February 13-17, 2006, the TSG-RAN WG4 group met for meeting #38 in Denver, CO USA in connection with the standards-setting process.

183.     On information and belief supported by publicly available documents, representatives of CCE's predecessors Siemens and NSN, including Volker Breuer, attended the February 2006 meeting in Denver.

184.     Volker Breuer is a named inventor on the '174 Patent.

185.     On information and belief supported by publicly available documents, there were additional changes made to TS 25.133 during the February 2006 meeting in Denver.

186.     On information and belief supported by publicly available documents, there were significant discussion and changes made to TS 25.133 during the November 2005 meeting in Seoul.

187.     On or about March 8-10, 2006, the TSG-RAN plenary group met for meeting #31 in Sanya (Hainan), China in connection with the standards-setting process.

188.     On information and belief supported by publicly available documents, representatives of CCE's predecessors Siemens and NSN, including Volker Breuer, attended the March 2006 meeting in Sanya (Hainan).

189.     On information and belief supported by publicly available documents, there were changes made to TS 25.133 during the March 2006 meeting in Sanya (Hainan).

190.     Siemens never disclosed the '174 Patent as relevant to either TS 25.133 or TS 25.215.  NSN waited until August 12, 2010 to declare the '174 Patent as relevant to TS 25.215, but never did so as to TS 25.133.

191.     CCE's predecessors Siemens and NSN had a duty to disclose the '174 Patent as essential to standards drafted and revised in WG1, WG4 and the TSG RAN Plenary groups as a result of its membership in ETSI and 3GPP, including its obligations to disclose essential IPRs under the IPR policies of ETSI and 3GPP.

192.     On information and belief supported by publicly available documents, CCE's predecessor NSN breached its duty to disclose the '174 Patent intentionally and knowingly failed to disclose or delayed disclosing the '174 Patent as essential, or potentially essential, to the specifications being drafted and revised at WG1, WG4 and the TSG RAN Plenary groups.

193.     On information and belief supported by publicly available documents, the foregoing delay to disclose the '174 Patent was made in bad faith with the intent to deceive and induce reliance.

194.     The foregoing actions and conduct have caused damage and continue to cause damage to LG Electronics and relevant third-parties.

195.     Accordingly, the '174 Patent is unenforceable due to implied waiver.

## FOURTEENTH DEFENSE

### (Unenforceability of the '174 Patent due to equitable estoppel)

196.     LG Electronics incorporates by reference paragraphs 1-195 above.

197.     CCE's predecessors Siemens and NSN had a duty to disclose the '174 Patent as essential to standards drafted and revised in WG1, WG4 and the TSG RAN Plenary groups as a result of its membership in ETSI and 3GPP, including its obligations to disclose essential IPRs under the IPR policies of ETSI and 3GPP.

198.     On information and belief supported by publicly available documents, CCE's predecessor NSN breached its duty to disclose the '174 Patent intentionally and knowingly failed to disclose or delayed disclosing the '174 Patent as essential, or potentially essential, to the specifications being drafted and revised at WG1, WG4 and the TSG RAN Plenary groups.

199.    On information and belief supported by publicly available documents, the foregoing delay to disclose the '174 Patent was made in bad faith with the intent to deceive and induce reliance.

200.    On information and belief supported by publicly available documents, CCE's predecessors Siemens and NSN's failure to disclose and/or delay in disclosing the '174 Patent led to the adoption and propagation of 3GPP standards without consideration of the '174 Patent.

201.    As a consequence of CCE's predecessors Siemens and NSN's failure to disclose and/or delay in disclosing the '174 Patent, ETSI members, 3GPP members, their successors, and customers throughout the supply chain, including LG Electronics and relevant third parties, thereafter designed, manufactured, and marketed products meant to comply with those 3G cellular standards, thereby reasonably and justifiably relying on CCE's predecessors Siemens and NSN's  promises to abide by ETSI and 3GPP IPR Policies, to their detriment.

202.    As a consequence of CCE's predecessors Siemens and NSN's failure to disclose and/or delay in disclosing the '174 Patent, ETSI members, 3GPP members, their successors, and customers throughout the supply chain, including LG Electronics and relevant third parties, thereafter designed, manufactured, and marketed products meant to comply with those 3G cellular standards, thereby reasonably inferred that Siemens and NSN did not intend to enforce the '174 Patent against potential infringers.

203.    The foregoing actions and conduct have caused damage and continue to cause damage to LG Electronics and relevant third-parties.

204.    Accordingly, the '174 Patent is unenforceable due to equitable estoppel.

## FIFTEENTH DEFENSE

### (Inequitable conduct)

205.     LG Electronics incorporates by reference paragraphs 1-204 above.

206.     The '820 Patent is invalid and unenforceable because the alleged inventor, Mr. Benoist Sebire, and/or others involved in the prosecution of the '820 Patent committed inequitable conduct intentionally failing to disclose material prior art to the United States Patent and Trademark Office ("USPTO").

207.     Upon information and belief, the alleged inventor of the '820 Patent, Mr. Benoist Sebire, did not invent the subject matter of the '820 Patent in whole or in part.

208.     Mr. Sebire was an active participant in 3GPP standardization activities. He served as a 3GPP standards representative for Nokia in at least the 3GPP TSG-RAN Working Group 2. Mr. Sebire received standards proposals from numerous standards representatives of other companies, attended standards meetings along with representatives of other companies, and participated in 3GPP standards body discussions with others pertaining to the alleged invention in the '820 Patent.

209.     Upon information and belief, Mr. Sebire derived the subject matter of the alleged information of the '820 Patent, in whole or in part, from information that he obtained from others during his participation in standards development activities such as his participation in 3GPP TSG-RAN Working Group 2 relating to buffer status reporting prior to the alleged priority date of November 5, 2007 for the '820 Patent.

210.     The persons from whom Mr. Sebire derived the alleged invention from include 3GPP TSG-RAN Working Group 2 standards representatives, including representatives from

Ericsson, Qualcomm Europe, Samsung, NTT DoCoMo, Alcatel, LG, NEC, and any others who participated in the standardization activities relating to buffer status reporting.

211. On information and belief, the information Mr. Sebire derived the alleged invention of the '820 Patent from information presented in one or more of the standards proposals submitted to the 3GPP TSG-RAN WG2 working group and meeting minutes: Standards Proposal R2-073211 entitled "Buffer Reporting for LTE UL"; Standards Proposal R2-074434 entitled "Use of MAC Padding"; Standards Proposal R2-042462 entitled "Control Information Transfer In MAC Layer"; Standards Proposal "R2-074245 entitled "Discussion on Scheduling Request"; Standards Proposal R2-063414 entitled "Scheduling Information Report for E-UTRAN"; Standards Proposal R2-074682 entitled "Uplink Scheduling Information in E-UTRAN"; Standards Proposal R2-074691 entitled "Framework for Scheduling Request and Buffer Status Reporting"; Standards Proposal R2-072515 entitled "Optimized Buffer Status Reporting"; Standards Proposal R2-073352 entitled "Optimized Buffer Status Reporting"; Standards Proposal R2-073352 entitled "Optimized Buffer Status Reporting"; Standards Report R2-075432 entitled "Report of LTE User Plane Session." (collectively, "Material Standards Documents").

212. The facts surrounding Mr. Sebire's derivation and the Material Standards Documents are material to the patentability of the '820 Patent.

213. Upon information and belief, Mr. Sebire, and/or others involved in the prosecution of the '820 Patent intentionally withheld the facts surrounding Mr. Sebire's derivation and the Material Standards Documents from the patent examiner during the prosecution of the '820 Patent.

214.    But for Mr. Sebire and/or the others involved in the prosecution of the '820 Patent intentionally withholding of this material information, the '820 Patent would not have issued.

## RESERVATION OF RIGHTS

215.    LG Electronics reserves all defenses under the Federal Rules of Civil Procedure, the Patent Laws of the United States, and any other defenses, at law or in equity, that may now exist or in the future be available based on discovery and further factual investigation in this case.

## LG ELECTRONICS' COUNTERCLAIMS

For its Counterclaims against Plaintiff Cellular Communications Equipment LLC ("CCE"), Defendants and Counterclaim Plaintiffs LG Electronics, Inc. and LG Electronics U.S.A., Inc. (collectively, "LG Electronics") allege as follows:

216.    LG Electronics incorporates by this reference all of its previous responses and/or allegations made in paragraphs 1 through 215 above as though set forth in full.

217.    LG Electronics reserves the right to amend this Answer to assert additional counterclaims that may be revealed during discovery.

## NATURE OF THE ACTION

218.    This is a civil action for declaratory judgment of non-infringement, patent invalidity, and unenforceability of one or more claims of U.S. Patent Nos. 7,941,174, 8,055,820, 7,218,923, and 6,810,019 under 35 U.S.C. §§ 1, *et. seq.* and 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

219.    LG Electronics, Inc. is a corporation organized under the laws of Korea with its principal place of business at LG Twin Tower 128, Yeoui-daero, Yeongdeungpo-gu, Seoul, Korea.

220.    LG Electronics U.S.A., Inc. is a company organized under the laws of the state of Delaware with its principal place of business at 1000 Sylvan Avenue, Englewood Cliffs, New Jersey.

221.    According to its complaint, CCE is a Texas limited liability company with its principal place of business in Plano, Texas.

## JURISDICTION AND VENUE

222.    LG Electronics' counterclaims arise under Title 35 of the United States Code. The Court has original jurisdiction over the subject matter of these counterclaims pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

223.    Personal jurisdiction in this judicial District is proper at least because CCE availed itself of this Court to litigate its patent infringement claims against LG Electronics.

224.    Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and (c) and 1400(a).  Although venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and (c) and 1400(a), LG Electronics reserves its right to move for a change of venue under 28 U.S.C. § 1404.

225.    As demonstrated by the Complaint filed by CCE in this action, an actual justiciable controversy exists between LG Electronics and CCE concerning the non-infringement, invalidity, and unenforceability of U.S. Patent Nos. 7,941,174 ("the '174 patent"), 8,055,820 ("the '820 patent"), 7,218,923 ("the '8923 patent"), and 6,810,019 ("the '019 patent") (collectively the "Patents-In-Suit").  CCE, by its Complaint, has asserted that LG Electronics has infringed and is infringing the Patents-in-Suit. LG Electronics asserts that it has not infringed and is not infringing the Patents-in-Suit and that the Patents-in-Suit are invalid and/or unenforceable. Absent a declaration of non-infringement, invalidity, and/or unenforceability, Counterclaim

Defendant CCE will continue to wrongfully assert the Patents-in-Suit against Counterclaim Plaintiffs LG Electronics, and thereby cause them irreparable injury and damage.

**COUNTERCLAIM I**

**(Declaration of Noninfringement of U.S. Patent No. 7,941,174)**

226.    LG Electronics realleges and incorporates by reference each and every allegation contained in Paragraphs 216-225 of its Counterclaims as though fully set forth herein.

227.    LG Electronics has not infringed and is not infringing any valid claim of the '174 patent directly, contributorily, by way of inducement, literally or under the doctrine of equivalents.

228.    LG Electronics is entitled to judgment that the claims of the '174 patent are not infringed by LG Electronics.

**COUNTERCLAIM II**

**(Declaration of Noninfringement of U.S. Patent No. 8,055,820)**

229.    LG Electronics realleges and incorporates by reference each and every allegation contained in Paragraphs 216-228 of its Counterclaims as though fully set forth herein.

230.    LG Electronics has not infringed and is not infringing any valid claim of the '820 patent directly, contributorily, by way of inducement, literally or under the doctrine of equivalents.

231.    LG Electronics is entitled to judgment that the claims of the '820 patent are not infringed by LG Electronics.

## COUNTERCLAIM III

### (Declaration of Noninfringement of U.S. Patent No. 7,218,923)

232.     LG Electronics realleges and incorporates by reference each and every allegation contained in Paragraphs 216-231 of its Counterclaims as though fully set forth herein.

233.     LG Electronics has not infringed and is not infringing any valid claim of the '8923 patent directly, contributorily, by way of inducement, literally or under the doctrine of equivalents.

234.     LG Electronics is entitled to judgment that the claims of the '8923 patent are not infringed by LG Electronics.

## COUNTERCLAIM IV

### (Declaration of Noninfringement of U.S. Patent No. 6,810,019)

235.     LG Electronics realleges and incorporates by reference each and every allegation contained in Paragraphs 216-234 of its Counterclaims as though fully set forth herein.

236.     LG Electronics has not infringed and is not infringing any valid claim of the '019 patent directly, contributorily, by way of inducement, literally or under the doctrine of equivalents.

237.     LG Electronics is entitled to judgment that the claims of the '019 patent are not infringed by LG Electronics.

## COUNTERCLAIM V

### (Declaration of Invalidity of U.S. Patent No. 7,941,174)

238.     LG Electronics realleges and incorporates by reference each and every allegation contained in Paragraphs 216-237 of its Counterclaims as though fully set forth herein.

239.    On information and belief, the claims of the '174 patent that are allegedly infringed by LG Electronics are invalid for failure to comply with one or more of the conditions for patentability specified under Title 35 of the United States Code, including without limitation, Sections 101, 102, 103, and/or 112.

240.    LG Electronics is entitled to judgment that the claims of the '174 patent are invalid.

## COUNTERCLAIM VI

### (Declaration of Invalidity of U.S. Patent No. 8,055,820)

241.    LG Electronics realleges and incorporates by reference each and every allegation contained in Paragraphs 216-240 of its Counterclaims as though fully set forth herein.

242.    On information and belief, the claims of the '820 patent that are allegedly infringed by LG Electronics are invalid for failure to comply with one or more of the conditions for patentability specified under Title 35 of the United States Code, including without limitation, Sections 101, 102, 103, and/or 112.

243.    LG Electronics is entitled to judgment that the claims of the '820 patent are invalid.

## COUNTERCLAIM VII

### (Declaration of Invalidity of U.S. Patent No. 7,218,923)

244.    LG Electronics realleges and incorporates by reference each and every allegation contained in Paragraphs 216-243 of its Counterclaims as though fully set forth herein.

245.    On information and belief, the claims of the '8923 patent that are allegedly infringed by LG Electronics are invalid for failure to comply with one or more of the conditions

Case 6:15-cv-00506-KNM   Document 87   Filed 11/13/15   Page 47 of 53 PageID #: 726

for patentability specified under Title 35 of the United States Code, including without limitation, Sections 101, 102, 103, and/or 112.

246.    LG Electronics is entitled to judgment that the claims of the '8923 patent are invalid.

## COUNTERCLAIM VIII

### (Declaration of Invalidity of U.S. Patent No. 6,810,019)

247.    LG Electronics realleges and incorporates by reference each and every allegation contained in Paragraphs 216-246 of its Counterclaims as though fully set forth herein.

248.    On information and belief, the claims of the '019 patent that are allegedly infringed by LG Electronics are invalid for failure to comply with one or more of the conditions for patentability specified under Title 35 of the United States Code, including without limitation, Sections 101, 102, 103, and/or 112.

249.    On June 24, 2015, the Patent Trial and Appeal Board ("PTAB") ordered that claims 11-13 of the '019 patent will be cancelled.

250.    LG Electronics is entitled to judgment that the claims of the '019 patent are invalid.

## COUNTERCLAIM IX

### (Breach of Contract)

251.    LG Electronics realleges and incorporates by reference each and every allegation contained in Paragraphs 216-250 of its Counterclaims as though fully set forth herein.

252.    The European Telecommunications Standards Institute and other 2G, 3G, and 4G standards bodies in which CCE and/or its predecessors have been involved (collectively, ETSI)

are standards-setting bodies responsible for standardization of information and communication technologies for the benefit of ETSI members and third parties.

253.    As a member of ETSI, and to comply with ETSI's Intellectual Property Rights ("IPR") Policy, CCE and/or its predecessors represented to ETSI, ETSI members, and third parties that it would grant irrevocable licenses to the Alleged Standard Essential Patents on fair, reasonable, and non-discriminatory ("FRAND") terms and conditions.

254.    CCE and/or its predecessors ETSI membership and activities, including the declarations it made to comply with ETSI's IPR policy for the Alleged Standard Essential Patents, created an express and/or implied contract with ETSI and/or ETSI members including an agreement that CCE and/or its predecessors would license those patents on FRAND terms and conditions. Under ETSI's IPR Policy, third parties that are not ETSI members also have the right to be granted licenses under those patents on FRAND terms and conditions.

255.    When a patent is declared as a Standard Essential Patent, the commitments made with regard to the declared patent are permanent, and cannot be revoked by sale of the patent.

256.    CCE did not make an offer to license the Alleged Standard Essential Patents on FRAND terms to LG Electronics prior to filing its Complaint for patent infringement.

257.    CCE's prayer for relief requests more than a FRAND royalty.

258.    CCE's conduct in the preceding paragraphs constitutes a breach of its contractual obligations to ETSI and/or ETSI members and deprives third parties of their right to be granted licenses under the Alleged Standard Essential Patents.

259.    As a result of CCE's breach, LG Electronics has incurred damages and will be further damaged in the future.  LG Electronics has been forced to expend resources resolving this dispute, and is threatened by the loss of profits, loss of customers and potential customers, loss of

goodwill and product image, uncertainty in business planning, and uncertainty among customers and potential customers.

260.    For at least the reasons detailed in the prior paragraphs, if LG Electronics is found to have infringed the Alleged Standard Essential Patents, LG Electronics is entitled to an order compelling specific performance of CCE's FRAND obligations.

## COUNTERCLAIM X

### (Declaration that Products are Licensed)

261.    LG Electronics realleges and incorporates by reference each and every allegation contained in Paragraphs 216-260 of its Counterclaims as though fully set forth herein.

262.    On information and belief and by way of example without limitation, LG Electronics has rights arising from its use of Qualcomm Incorporated ("Qualcomm") components in certain LG Electronics products.

263.    On information and belief, CCE has licensed the patents in suit to third parties.

264.    On information and belief, some of those third parties are LG Electronics suppliers.

265.    In particular, LG Electronics uses Qualcomm Incorporated ("Qualcomm") components in certain accused LG Electronics products.

266.    On information and belief, Qualcomm entered into a license agreement with CCE and/or its predecessors by which Qualcomm received, among other things, certain rights related to the Asserted Patents and other CCE patents (collectively, "the Qualcomm Licensed Patents").

267.    LG Electronics has an express or implied license to manufacture, use, import, and sell electronic devices incorporating licensed Qualcomm components under the Qualcomm Licensed Patents.

268.    Notwithstanding this license, CCE alleged infringement and is seeking compensation for products that are licensed under the Qualcomm license.  LG Electronics has been forced to expend resources resolving this dispute, and is threatened by the loss of profits, loss of customers and potential customers, loss of goodwill and product image, uncertainty in business planning, and uncertainty among customers and potential customers.

## PRAYER FOR RELIEF

WHEREFORE, LG Electronics prays for relief as follows:

A.    That the Court enter judgment in favor of LG Electronics and against CCE on all of the claims in CCE's Complaint;

B.    That CCE's claims be dismissed in their entirety, with prejudice;

C.    That CCE takes nothing by way of its claims;

D.    That the Court enter judgment in favor of LG Electronics on each of its Counterclaims against CCE;

E.    That LG Electronics be found not to have infringed the '174 patent;

F.    That the '174 patent be declared to be invalid and unenforceable against LG Electronics;

G.    That LG Electronics be found not to have infringed the '820 patent;

H.    That the '820 patent be declared to be invalid and unenforceable against LG Electronics;

I.    That LG Electronics be found not to have infringed the '8923 patent;

J.    That the '8923 patent be declared to be invalid and unenforceable against LG Electronics;

K.    That LG Electronics be found not to have infringed the '019 patent;

L.    That the '019 patent be declared to be invalid and unenforceable against LG

Electronics;

M.      That judgment be entered requiring CCE's specific performance under its contract

with ETSI and/or ETSI members to grant a license to LG Electronics under the

Alleged Standard Essential Patents asserted against LG Electronics;

N.      That this case be declared an exceptional case;

O.      That LG Electronics be awarded its costs and attorneys' fees pursuant to 35

U.S.C. § 285; and

P.      That LG Electronics be awarded such other and further relief as this Court may

deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, LG Electronics hereby

requests a trial by jury on all claims and issues so triable.


Dated: November 13, 2015                        Respectfully submitted,

                                                */s/ Jamie B. Beaber*
                                                Jamie B. Beaber (D.C. Bar No. 484186)
                                                Kfir B. Levy (D.C. Bar No. 989212)
                                                MAYER BROWN LLP
                                                1999 K Street, N.W.
                                                Washington, DC 20006-1101
                                                Telephone: (202) 263-3000
                                                Facsimile: (202) 263-3300
                                                jbeaber@mayerbrown.com
                                                klevy@mayerbrown.com

                                                Michael E. Jones
                                                State Bar No. 10929400
                                                mikejones@potterminton.com
                                                Allen F. Gardner
                                                State Bar No. 24043679
                                                allengardner@potterminton.com
                                                POTTER MINTON P.C.
                                                110 N. College Avenue, Suite 500

51

Tyler, Texas 75702
Telephone: (903) 597-8311
Facsimile: (903) 593-0846

**ATTORNEYS FOR LG ELECTRONICS,
INC. AND LG ELECTRONICS U.S.A.,
INC.**

## CERTIFICATE OF SERVICE

The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served this 13th day of November, 2015, with a copy of this document via electronic mail pursuant to Local Rule CV-5(d).

*/s/ Jamie B. Beaber*
Jamie B. Beaber